UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WOMEN FOR AMERICA FIRST<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　　　　　vs.<br><br>BILL DE BLASIO, *in his official capacity as the Mayor of New York City and* POLLIY TROTTENBERG, *Commissioner of the New York City Department of Transportation*,<br><br>　　　　　　　　　　　　Defendants. | Civil Action No. 20-CV-5746 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR CROSS-MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

JAMES E. JOHNSON
Corporation Counsel of the
　City of New York
Attorney for the City of New York,
Mayor Bill de Blasio and New York
City Department of Transportation
Commissioner Polly Trottenberg
100 Church Street
New York, New York 10007

Sheryl Neufeld,
Diana M. Murray,
　　*of Counsel.*

September 14, 2020

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    POINT I ............................................................................................................................. 2

        PLAINTIFF FAILS TO STATE A FIRST AMENDMENT CLAIM ........................................................................... 2

    POINT II ............................................................................................................................ 7

        PLAINTIFF FAILS TO SATISFY THE REQUIREMENTS FOR A PRELIMINAROY INJUNCTION ............................................................................. 7

CONCLUSION ............................................................................................................................... 9

Defendants Bill de Blasio, as Mayor of the City of New York (the "City") ("Mayor de Blasio" or "the Mayor") and Polly Trottenberg, as Commissioner of the Department of Transportation Commissioner (jointly, "the City"), by their attorney James E. Johnson, Corporation Counsel of the City of New York, submit this memorandum of law in support of their cross-motion to dismiss the First Amended Complaint ("the Complaint"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim under the First Amendment, and in opposition to plaintiff's motion for a preliminary injunction.

As alleged in the Complaint, plaintiff claims that defendants violated plaintiff's First Amendment rights by not permitting plaintiff to paint its message on City streets while Black Lives Matter murals were allowed on City streets. As discussed herein, the Complaint fails to state a claim under the First Amendment as the Black Lives Matter murals constitute government speech and are not subject to First Amendment scrutiny.[1]  In the absence of a First Amendment claim, among other reasons, plaintiff fails to meet the standard for a preliminary injunction. Accordingly, the cross-motion should be granted and the Complaint dismissed, and the preliminary injunction motion should be denied.

---

[1] The Black Lives Matter murals have been allowed on City streets in each of the five boroughs: three in Manhattan, two in Brooklyn, two in the Bronx, and one each in Staten Island and Queens. Photos of the murals are annexed as Exhibits B through J to the Declaration of Diana M. Murray, dated September 14, 2020 ("Murray Decl.").

# ARGUMENT

## POINT I

### PLAINTIFF FAILS TO STATE A FIRST AMENDMENT CLAIM

Plaintiff's claim that defendants violated its First Amendment rights by allowing the Black Lives Matter murals to be painted on City streets and not allowing plaintiff to paint its message on City streets fails as a matter of law. The Black Lives Matter murals constitute government speech, which is not subject to First Amendment scrutiny, and thus do not provide a basis for plaintiff's First Amendment claim.

While government "discrimination against speech because of its message is presumed to be unconstitutional," Rosenberger v. Rector & Visitors of Univ. of VA, 525 U.S. 819, 828 (1995), the government's own speech is exempt from First Amendment scrutiny. Johanns v. Livestock Mktg Ass'n, 544 U.S. 550, 553 (2005). As such, government speech is not regulated by the Free Speech Clause, Pleasant Gove City, v. Summum, 555 U.S. 460, 467 (2009) (the Free Speech Clause does not regulate "government speech"), and the First Amendment strictures imposed on traditional public forums, i.e., streets, parks and sidewalks, Perry Edu. Ass'n v. Perry Local Educators'Ass'n, 460 U.S. 37 (1984), do not apply. Walker v. Texas Divison, Sons of Confederate Veterans, Inc., 135 S. Ct. 2239, 2250 (2015). See also United States v. Am Library Ass'n, 539 U.S. 194 (2003) (forum analysis is not appropriately applied when the government has broad discretion to make content-based judgments in deciding what private speech is to be made public).

Accordingly, when "government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." Walker, 1576 U.S. Ct. at 207. Rather, a

2

government entity may speak for itself, Board of Regents of Univ. of Wis. System, v. Southworth, 529 U.S. 217, 219 (2000), say what it wishes, Rosenberger, 525 U.S. at 833, and select the view it wants to express. Rust v. Sullivan, 500 U.S. 173, 194 (1991). See also National Endowment for the Arts v. Finley, 524 U.S. 569, 598 (1998) ("It is the very business of government to favor and disfavor points of view"); Board of Regents, supra, at 235 (a government entity is accountable to the electorate and the political process; if the citizenry objects newly elected officials could espouse different or contrary positions).

A government also may exercise its right to express its views with the assistance of private sources. Johanns, 544 U.S. at 562; Rosenberger, 515 U.S. at 833. As the Supreme Court found in addressing whether a monument created with private funds constituted government speech, once installed, a monument is meant to convey, and has the effect of conveying, a government message and thus constitutes government speech. Summum, 555 U.S. at 472. Moreover, the Court found that while a city engages in expressive conduct by accepting and placing a monument on city property, the intended and perceived significance of that conduct may not coincide with the thinking of the monument's creator or donor. Id. at 476. Significantly, the Court also recognized that a monument, even when featuring a written word, may inspire varying interpretations, citing as examples the "Beef. It's what's for Dinner" slogan addressed in Johanns, the "Imagine" mosaic in Central Park, and the statue displaying the word "peace" in many languages in Fayetteville, Arkansas.. Id. at 474. Notably, the Court also rejected the need for a formal process in selecting a monument. Id. at 473.

The Black Lives Matter murals at issue here fall squarely within the confines of government speech. The words Black Lives Matter, while subject to various interpretations, have their own meaning apart from any connection to a movement or organization and address a

3

subject of general public interest.  As acknowledged in statements attributed to the Mayor and to his spokesperson Julia Arredondo, the Black Lives Matter murals addressed an issue bigger than any group and was an approach to righting a wrong – the "original sin of the United States of slavery" and its effects over 400 years – and was a means of moving forward by making clear that black lives matter as a first step for all lives to matter. Complaint, ¶¶ 27, 29, 40.[2] Accordingly, the Black Lives Matter murals can reasonably be understood as a government message rather than a private message, regardless of the participation of private citizens, and thus constitute government speech. See Summum, 555 U.S. at 487 (the best approach to determining whether speech is governmental is whether a reasonable and fully informed observer would understand the expression to be government speech, as distinct from private speech the government chooses to oblige by allowing its placement on public land).

        The allegations in the Complaint leave unrefuted that the Black Lives Matter murals are government speech.  Plaintiff's conclusory allegations as to outside influence or the alleged involvement of the "Black Lives Matter organization" in the painting of the murals, Plaintiff's Memorandum of Law in Support of Its Motion for a Preliminary Injunction  at 10, are without effect on the murals' status as government speech.   As the law is clear that even when privately paid for, a monument is a form of government speech, Summum, supra, the Black Live Matter murals constitute government speech regardless of outside influence or the alleged involvement of the "Black Lives Matter organization" in the painting of the murals.

---

[2] A similar Black Lives Matter mural was installed on the street in the District of Columbia on or about June 5, 2020. The public purpose of the mural, in that case, was to send a message that the District of Columbia streets were safe in the interest of restoring calm to the District of Columbia following a demonstration on June 1, 2020.  Declaration of John Falcicchio, dated July 13, 2020, filed in Penkoski v. Bowser,  20 Civ. 1519, annexed as Exhibit K to the Murray Decl.

The alleged partisan political nature of the message of the Black Lives Matter murals similarly is without effect on the status of the murals as government speech. Under established precedents, neither the alleged association of the words Black Lives Matter with a movement, a particular organization or political party, nor plaintiff's description of the Black Lives Matter murals as an alleged partisan political message supportive of the Mayor's political alleged presidential aspirations, see Complaint ¶¶ 4-7, invalidates the murals as government speech. The allowance of the Black Lives Matter murals on City streets constitutes, and signifies to the observer, the City's endorsement of the murals, Summum, 555 U.S. at 471 (whether on private or public property, a monument is reasonably interpreted by the observer as conveying the message of the property owner), but not all interpretations the Black Lives Matter murals may inspire. Id. at 474 (acceptance of the monument is deemed an implicit endorsement of the message of the monument but not the donor's specific meaning, and may inspire varying interpretations by observers).

Accordingly, pursuant to Summum, plaintiff's varying description of Black Lives Matter as a movement or organization is without effect on the Black Lives Matter mural's classification as government speech. On their face, the words Black Lives Matter have meaning separate from any movement or organization, whether large, small or decentralized, whether named Black Lives Matter or merely like-minded and regardless of any slogan or policy they share of advocating against police violence towards black people and on behalf changes related to the rights of black people. See Complaint ¶¶ 5-7, 9-12. Similarly, the allegations that Black Lives Matter is a national and political movement recognized for street demonstrations, whose activists were involved with the 2016 presidential election and whose participants "essentially unanimously" supported the Democratic candidate Hillary Clinton, and which "for all practical

5

purposes" is affiliated with the Democratic Party and unquestionably hostile to the Republican Party, Complaint ¶¶ 7, 10-11, 13, do not alter the inherent meaning of the words Black Lives Matter and their proper use as a governmental message.  The allegation that few politicians have made commitment to Black Lives Matter more central to their work in government than the Mayor, who is a Democrat, Complaint ¶ 14, also ignores the distinction between the words themselves and groups or movements associated with those words.  Accordingly, plaintiff's attempt to characterize the Black Lives Matter murals as the authorization of a movement's or organization's message, rather than the City's own message and thus a form of government speech, is without merit.

As recognized by the Supreme Court in Summum, there may be situations where it is difficult to determine whether a government entity is speaking on its own behalf or providing a forum for private speech.  555 U.S. at 471.  Such a situation was not found in Summum, where at issue was a stone monument incorporating the Seven Aphorisms of the donor, respondent Summon, a religious organization, id. at 465, 471, and is not present here.  As in Summum, the City's decision to permit the Black Lives Matter murals and to deny plaintiff's request for a mural with plaintiff's message does not give rise to a First Amendment claim as the City has a right to speak for itself and to select the views that it wants to express.  555 U.S. at 467-468.  Because the words Black Lives Matter convey their own message apart from the name or motto of a movement or organization, its selection as the City's message is neither endorsement nor advocacy on behalf of either the Black Lives Matter movement or any Black Lives Matter organization.  Thus, the refusal to allow plaintiff's mural represents the selection of one message for publication by the government |rather than another based on the message itself, rather than the selection of one group or organization over another, and does not violate the First

Amendment. See Summum, 555 U.S. at 484 (Breyer, J., concurring, a selection on "grounds unrelated to the display's theme, say, solely on political grounds … might well violate the First Amendment"). Accordingly, the Complaint fails to state a First Amendment claim and should be dismissed.

## POINT II

### PLAINTIFF FAILS TO SATISFY THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION

In order to establish entitlement to a preliminary injunction in connection with government action, a plaintiff must establish that (1) they will be irreparably injured if the relief sought is not granted; (2) they are likely to succeed on the merits of their claims; (3) the balance of the equities is in their favor; and (4) that an injunction would be in the public interest. See, e.g., Trump v. Deutsche Bank AG, 943 F3d 627, 640 (2d Cir. 2019 [citations omitted]. Chemical Bank v. Haseotes, 13 F.3d 569, 572-73 (2d Cir. 1994)  Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989). See also Bery v. City of New York, 97 F.3d 689 (2d Cir. 1996), cert. denied, 520 U.S. 1251 (1997). Where a movant seeks a preliminary injunction that would provide the ultimate relief sought in the underlying action, a heightened standard applies. Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 33-34 (2d Cir. 1995). Under this heightened standard, a plaintiff must make a clear showing that it is entitled to the relief requested or that "extreme or very serious damage" will result from denial of preliminary relief. Nicholson v. Scoppetta, 344 F.3d 154, 165 (2d Cir. 2003).

The Second Circuit has held that "[v]iolations of First Amendment rights are commonly considered irreparable injuries for the purposes of a preliminary injunction," Bery, 97

F.3d at 693.  As set forth in the recent decision in this district, Geller v. de Blasio, et al., 2020 U.S. Dist. LEXIS 87405, at *6-7  (S.D.N.Y. May 18, 2020), although "a showing of irreparable harm is often considered the 'single most important prerequisite for the issuance of a preliminary injunction,' Faiveley transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118) (2d Cir. 2009) (citation omitted), [c]onsideration of the merits is virtually indispensable in the First Amendment context, where the likelihood of success on the merits is the dominant, if not the dispositive, factor." N.Y. Progress and Prot. PAC v. Walsh, 733 F.3d 488 (2d Cir. 2013)." Geller, 2020 U.S. Dist. LEXIS 87405, at *6.

As previously discussed, plaintiff's First Amendment claim fails as a matter of law as the decision to deny plaintiff's request for a mural while allowing the Black Lives Matter murals constitutes government speech and thus is not subject to scrutiny under the First Amendment.  See supra, pp. 2-6.  In the absence of First Amendment scrutiny, forum analysis in general is not applicable, nor can plaintiff claim a violation of the First Amendment on the ground that the Black Lives Matter murals turned City streets into a forum for public expression. See Walker v. Texas Divison, Sons of Confederate Veterans, Inc., 135 S. Ct. 2239, 2250 (2015); United States v. Am Library Ass'n, 539 U.S. 194 (2003) (forum analysis is not appropriately applied when the government has broad discretion to make content-based judgments in deciding what private speech is to be made public).  Accordingly, plaintiff cannot succeed on the merits of its First Amendment claim or make a clear showing of entitlement to the relief requested.  As plaintiff has alternative means to publicly communicate its message, it will also not suffer "extreme or very serious damage," if the preliminary injunction motion is denied.  For the same reason, the equities are not in plaintiff's favor nor would an injunction be in the public's interest. Accordingly, plaintiff's motion for a preliminary injunction should be denied.

## CONCLUSION

For the foregoing reasons, defendants Mayor Bill de Blasio, and Department of Transportation Commissioner Polly Trottenberg respectfully request that this Court grant defendants' cross-motion to dismiss for failure to state a claim and deny plaintiff's motion for a preliminary injunction, together with such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         September 14, 2020

JAMES E. JOHNSON
Corporation Counsel
   of the City of New York
Attorney for Respondents
100 Church Street
New York, New York 10007
(646) 939-6324

By:    /S/
       DIANA M. MURRAY

cc:   Ronald D. Coleman, Esq. (By ECF)